IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHAREFF RUDD,** : | |
| Petitioner, : | |
| v. : | NO. 08-2021 |
| : | |
| **JEFFREY BEARD,** : | |
| Respondent. : | |

### ORDER

**AND NOW**, this 21st day of August 2009, upon consideration of Report and Recommendation [Doc. No. 15], the Objections filed in the above captioned action pursuant to 28 U.S.C. § 2254 [Doc. No. 41], the Government's Response [Doc. No. 43], and a review of the record it is hereby **ORDERED** as follows:

1. The Clerk of Court is directed to remove this action from the suspense docket and return it to the active docket;

2. The Report and Recommendation of United States Magistrate Judge Timothy R. Rice dated September 24, 2008 is **APPROVED AND ADOPTED**.

3. Petitioner's Objections to the Report and Recommendation are **OVERRULED**;

4. The Petition for Habeas Corpus Relief [Doc. No. 1] filed pursuant to 28 U.S.C. § 2254 is **DENIED**;

5. A certificate of appealability **SHALL NOT ISSUE**.

6. The Clerk of Court shall **CLOSE THIS CASE**.

As a general matter, a district court may determine, in its discretion, the extent to which it will review the report and recommendation of a magistrate judge.[1] At a minimum, the court should be satisfied that there is no clear error on the face of the record,[2] and should "give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."[3] This Court finds that Magistrate Judge Rice's Report and Recommendation is thorough and factually and procedurally correct, and that it should be adopted. However, a district court is required to review *de novo* those parts of a magistrate judge's report to which a litigant makes specific objection.[4]

**A.     First Objection: The Magistrate Judge applied an inappropriate level of deference to the state court's determination that no interrogation took place.**

Petitioner contends that Magistrate Judge Rice applied an inappropriate level of deference to the state trial court's factual determinations regarding whether Petitioner's statements were obtained in violation of his constitutional rights. Petitioner asserts that "no presumption of correctness should have been applied since the issue of custodial interrogation is a mixed question of fact and law under 2254 § (e)(1)."[5]

A federal court reviewing a § 2254 petition should presume that the state-court's fact findings are correct. However, a state-court determination that a suspect was not "in custody"

---

[1] See Thomas v. Arn, 474 U.S. 140, 154 (1985); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984). (a district court may "accept, reject, in whole or in part, the magistrate's findings or recommendations."

[2] See Fed. R. Civ. P. 72(b) Advisory committee's note (p.63).

[3] Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

[4] 28 U.S.C. § 636(b)(1)(C).

[5] Objections at p. 3.

when he confessed is not strictly a finding of fact warranting a presumption of correctness. The issue of whether a suspect is "in custody" presents a mixed question of law and fact qualifying for independent review in habeas corpus proceedings.[6]

In his Report and Recommendation ("R&R"), Magistrate Judge Rice amply acknowledged and correctly applied the standard requiring him to review the record as to both law and fact. The R&R contains a detailed analysis of the interplay between the two specific portions of § 2254 that he was obligated to consider. The Magistrate Judge acknowledged that under § 2254(e)(1) Petitioner would be permitted to rely upon evidence not presented to the state court in support of his habeas petition, which could result in a reassessment of the facts.[7] However, he also noted that any new evidence allowed under § 2254(e)(1) must be considered in conjunction with the language of § 2254(d)(2), which states that habeas relief shall only be granted if a rational jurist could not reach the same finding on the basis of the evidence in the record.[8] Moreover, Magistrate Judge Rice acknowledged that deference to a state court's factual findings is reserved for "basic, primary, or historical facts," resolution of which depends heavily on the trial court's "appraisal of witness credibility and demeanor."[9] He pointed out that "[s]uch inquiries allow a fact finder to assess 'what happened,' as opposed to making legal determinations, such as the voluntariness of a confession or the existence of a potential conflict

---

[6] See Thompson v. Keohane, 516 U.S. 99, 102 (1995).

[7] See R&R at p. 8.

[8] See Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); R&R at p. 8.

[9] Keohane, 516 U.S. at 111.

of interest."[10]

Petitioner offered no additional evidence other than that which had been presented to the state court in support of his constitutional claims. Therefore, the Magistrate Judge was left to examine the state court record and determine whether, based on the evidence therein, a rational jurist could not reach the same conclusion as the state court. This Court finds no error in the standard of deference applied to the trial court's findings.

**B.      Second Objection: The Report and Recommendation misapplied the standard set forth in Rhode Island v. Innis**

The Petitioner contends that the ruling of the Superior Court of Pennsylvania, in denying relief to this Petitioner on his claim that the Motion to Suppress his electronically recorded statements to the co-defendant, constituted an unreasonable application of the principles expressed in Road Island v. Innis, resulting in constitutional error.[11] In Innis, the United States Supreme Court considered under what circumstances a custodial investigation takes place. In that case, a murder suspect was arrested and read his Miranda rights for the first time, and then read those rights a second time when additional police arrived on the scene. The suspect advised the police that he understood his rights and wished to speak with an attorney. He was then placed in the back of a police car. As two policemen drove the car to their destination, they discussed their belief that the murder weapon had been discarded near a school for disabled children and spoke of the possibility that a student at the school could find that weapon. Although the policemen's conversation did not include defendant, and neither officer directed

---

[10] R&R at p. 8 (citing Keohane, 516 U.S. at 111).

[11] Objections at p. 2; see R.I. v. Innis, 446 U.S. 291 (1980).

4

any comments or questions to the suspect, he overheard the conversation and asked the policemen to turn the car around so that he could show them where the murder weapon was hidden. He thereafter sought to suppress his incriminating statements as given in the context of a "custodial interrogation" in violation of his Fifth Amendment rights.

The Supreme Court found that the suspect's Fifth Amendment rights under Miranda had not been violated because, although he was in custody, "the special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."[12] However, the Supreme Court also held that "interrogation" does not only refer to the explicit words or questions of police officers, but also their actions.[13]

> [T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police."[14]

Since Innis, the Supreme Court has addressed a number of situations in which they determined whether a defendant offered an incriminating statement in the context of a custodial interrogation. The Supreme Court has consistently held that "[c]onfessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling

---

[12] Innis, 446 U.S. at 300.

[13] Id. at 300-301.

[14] Id.

5

influences is, of course, admissible in evidence.  The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . volunteered statements of any kind are not barred by the Fifth Amendment."[15]  Moreover, the Supreme Court has stated that "Officers do not interrogate a suspect simply by hoping that he will incriminate himself."[16]

   There is no question that Petitioner was in the custody of police when he offered an incriminating statement.  The constitutional question, however, pivots on the determination of whether he was being "interrogated" by police.  Magistrate Judge Rice concluded, and this Court agrees, that the facts support a finding that Petitioner was not being interrogated.  There were no police in the room for the entire period that Petitioner and the co-defendant were being recorded.  Therefore, Petitioner cannot claim that any officer's words or actions intimidated him into offering a confession.  Moreover, Petitioner and the co-defendant had been read their Miranda rights and specifically advised that anything they said to each other could be used against them.  Additionally, the fact that Petitioner and the co-defendant spoke of the possibility that they were being recorded and still chose to speak with each other about the possible charges against them shows that Petitioner was aware of the consequences of the conversation and independently chose to engage in it regardless.  Such actions also establish that Petitioner did not "perceive" that he was being interrogated and that the statement was offered voluntarily.

   Yet, the weight of Petitioner's argument lies in his contention that the presence of an

---

[15] Ariz. v. Mauro, 481 U.S. 520, 529 (1987) (citing Miranda, 384 U. S., at 478).

[16] Mauro, 481 U.S. at 529.

affidavit outlining the potential charges against him and the co-defendant is the factor that distinguishes this situation as a "custodial interrogation." Yet, Petitioner can point to no controlling federal law that would direct the Court to consider the presence of an affidavit and paperwork containing information about potential charges against him as evidence of an interrogation. Instead, Petitioner relies on the Third Circuit ruling in United States v. Green,[17] which, since the R&R was submitted, has been vacated and replaced with a subsequent ruling by the Third Circuit following a rehearing. The newly issued precedential opinion of the Third Circuit regarding Green leaves largely unaddressed questions related to the Fifth Amendment matters addressed in the first.[18]

The crucial factor in the present case is that police officers were not present in the room with Petitioner at the time he reviewed any of the documents in question, or spoke with the co-defendant. "The essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone that he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking."[19] Petitioner was in custody, but the elements that the Supreme Court has consistently held create an atmosphere of interrogation were not in place at the time Petitioner offered incriminating statements. He was in a room, twice Mirandized, alone with the co-defendant, without

---

[17] 541 F.3d 176, 184 (3d Cir. 2008) (vacated by 304 Fed. Appx. 981; 2008 U.S. App. LEXIS 26953) (substituted opinion at 556 F.3d 151, 153 (3d Cir. 2009).

[18] U.S. v. Green 556 F.3d 151, 154 n.2 (3d Cir. 2009)("Although the Government arguably violated Green's rights under the Fifth Amendment and the Miranda doctrine, the Court need not reach such constitutional issues at the present time.")

[19] Illinois v. Perkins, 496 U.S. 292, 296 (1990).

7

interruptions from or the presence of police. The Court finds no Fifth Amendment violation and concludes that each of Petitioner's objections are without merit and will be overruled.

**C.     Conclusion**

The R&R is adopted in full, except for Magistrate Judge Rice's recommendation that this Court recommend the issuance of a certificate of appealability. A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right."[20] A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[21] Particularly in light of Petitioner's heavy reliance on the Third Circuit's original opinion in U.S. v. Green, which has since been vacated, the Court finds that Petitioner has not met his burden here. Thus, a certificate of appealability will not issue.

It is so **ORDERED**.

**BY THE COURT**:

s/Cynthia M. Rufe

_____

**CYNTHIA M. RUFE, J.**

---

[20] 28 U.S.C. § 2253(c)(2).

[21] Slack v. McDaniel, 529 U.S. 473, 484 (2000).